UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANNA RABINOVYCH and<br>SABA ALELISHVILI,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>ALEJANDRO MAYORKAS, Secretary of the<br>U.S. Department of Homeland Security, U.S.<br>DEPARTMENT OF HOMELAND<br>SECURITY, U.S. CITIZENSHIP AND<br>IMMIGRATION SERVICES, and TERRI A.<br>ROBINSON, Director,<br>U.S. Citizenship and Immigration Services,<br><br>　　　　　　Defendants. | Case No. 21-CV-11785-AK |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**A. KELLEY, D.J.**

　　Plaintiffs Anna Rabinovych ("Ms. Rabinovych") and Saba Alelishvili ("Mr. Alelishvili") (collectively, "Plaintiffs") assert claims against Alejandro Mayorkas, the United States Secretary of Homeland Security; the Department of Homeland Security ("DHS"); the United States Citizenship and Immigration Services ("USCIS"); and Terri A. Robinson, Director of USCIS (collectively, "Defendants"). Plaintiffs seek a declaratory judgment ordering Defendants to reopen Plaintiffs' applications for adjustment of immigration status; declaring Defendants' previous denials of their applications to be in violation of the Administrative Procedure Act ("APA"); and ordering Defendants to readjudicate and approve Plaintiffs' applications. [See Dkt. 1 ("Compl.")]. Pending before this Court are Defendants' two motions to dismiss [Dkts. 33,

1

39] and a motion by Plaintiffs for injunctive relief [Dkt. 19], which seeks to prohibit Defendants from conducting any asylum interview with Plaintiffs until their underlying claims in this action may be fully litigated.  For the reasons set forth below, Defendants' motions to dismiss [Dkts. 33, 39] are **GRANTED** and Plaintiffs' motion for injunctive relief is therefore **DENIED** as moot.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs are residents of Massachusetts.[1]  Ms. Rabinovych is a native and citizen of Ukraine, and Mr. Alelishvili is a native and citizen of Georgia.  In February 2015, Ms. Rabinovych was lawfully admitted to the United States on an F-1 student visa, with a valid Employment Authorization Document ("EAD") pursuant to her eligibility to work as an F-1 student with Optional Practical Training.  Ms. Rabinovych was lawfully employed as an executive assistant in Boston from April 2015 to December 2016.  In November 2015, Mr. Alelishvili lawfully entered the United States on a B-2 tourist visa, which permitted him to remain in the country through May 2016.

In May 2015, Ms. Rabinovych filed an I-589 application for political asylum, listing her husband, Mr. Alelishvili, as a derivative beneficiary.  Ms. Rabinovych then applied for a new EAD based on her application for political asylum, which USCIS issued with validity dates from January 2016 to January 2017.  She has applied for, and obtained, subsequent EAD cards based on her application for asylum in two-year increments, and has been lawfully employed at JetBrains, Inc., since January 2017.  Mr. Alelishvili likewise obtained an EAD card in February 2016 based on his wife's application for asylum, has obtained subsequent EAD cards in two-year

---

[1] On a motion to dismiss, the Court draws all inferences in favor of the plaintiffs and accepts all facts alleged as true for the purpose of determining whether the complaint survives.  See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  Here, the facts are not in dispute.  Accordingly, the Court draws all facts from Plaintiffs' Complaint.  [See Dkt. 1].

increments, and has remained lawfully employed in the United States.  At the time Plaintiffs filed their complaint, USCIS had not yet taken action on Ms. Rabinovych's asylum application, which has allowed Plaintiffs to remain lawfully in the United States following the expiration of their visas.

In May 2019, JetBrains filed a Form 9089 Application for Permanent Employment with the U.S. Department of Labor on behalf of Ms. Rabinovych.  The Department of Labor certified this application in February 2020 and filed an I-140 Immigrant Petition for Alien Worker with USCIS, requesting premium processing service.  Concurrently, Plaintiffs filed applications with USCIS to adjust their status.  USCIS approved the I-140 in March 2020, which made Plaintiffs eligible for adjustment of status to "lawful permanent resident" subject to their satisfaction of the requirements of 8 U.S.C. § 1255(a).  In November 2020, USCIS sent each Plaintiff a Request for Initial Evidence (RFE), asking them to submit evidence that they had maintained lawful non-immigrant status since their last lawful admission to the United States.  Plaintiffs submitted attorney-prepared responses to the RFEs, which indicated that any failure of either Plaintiff to maintain lawful status was due to technical reasons related to USCIS' non-action on the application for political asylum.  In May 2021, USCIS notified Plaintiffs that it had denied their applications to adjust status.  USCIS indicated that Ms. Rabinovych had not maintained lawful status since her February 2015 admittance to the United States, had violated the terms of her admission, and had not been in lawful status when she filed her application for adjustment of status in February 2020.  Specifically, USCIS indicated that Ms. Rabinovych had failed to maintain lawful status, or had otherwise violated the terms of her admission, for greater than the 180 maximum excusable period permitted by statute.  Because Mr. Alelishvili was a derivative beneficiary of his wife's application, USCIS's denial of Ms. Rabinovych's application meant that

his application failed as well. In June 2021, the Plaintiffs each filed a timely motion to reconsider on Form I-290B. USCIS denied both motions in August 2021. Plaintiffs then filed the instant complaint in November 2021.

On April 1, 2022, Plaintiffs filed an emergency motion for injunctive relief, in which they informed the Court that USCIS had scheduled them for an asylum interview at 10:00 AM on April 11, 2022, at the USCIS Boston Asylum Office, and sought "to enjoin the Defendants from conducting the interview as scheduled and from taking any further action on their application for political asylum, including rescheduling the interview, pending the outcome of the litigation on the merits of the Plaintiffs' claims." [Dkt. 19 at 1; see Dkt. 19-1]. In that motion and accompanying memorandum of law, Plaintiffs stressed that they required emergency injunctive relief because they would suffer "irreparable harm" if their underlying claims in this action were to become moot upon Plaintiffs' asylum interview taking place. [Dkt. 19 at 1–2; Dkt. 20 at 8].

Although USCIS canceled Plaintiffs' April 11, 2022, asylum interview prior to the motion hearing scheduled before the Court, Plaintiffs maintained that the injunctive relief sought in their original motion, as well as the scheduled hearing thereon, remained necessary. [Dkt. 28 at 1]. The Court accordingly heard argument from counsel for both parties on April 8, 2022. [Dkt. 29]. Following the April 8, 2022, motion hearing, the Court issued an order noting that, while USCIS's cancellation of the April 11, 2022, interview eliminated the immediate need for resolution of Plaintiffs' request for injunctive relief, such cancellation did not resolve the issues related to the interview's timing, possible mooting of Plaintiffs' underlying claims, and the Court's need to address jurisdictional issues prior to ruling on the motion. [Dkt. 30]. Defendants agreed to suspend the asylum interview until a later date to allow the Court time to consider the parties' various requests.

On April 18, 2022, Defendants filed a motion to dismiss [Dkt. 33] pursuant to Federal Rule of Civil Procedure 12(b)(1), in which they argue that this Court lacks subject matter jurisdiction to hear Plaintiffs' claims. Defendants filed a notice of supplemental authorities [Dkt. 36] to its motion to dismiss on April 26, 2022; Plaintiffs filed an opposition [Dkt. 37] on May 18, 2022; and Defendants filed a reply [Dkt. 38] on May 27, 2022. Following the briefing of Defendants' first motion to dismiss [Dkt. 33], Defendants filed a supplemental motion to dismiss and accompanying memorandum of law, in which they provided their interpretation of the effect of a recently decided Supreme Court case, Patel v. Garland, — U.S. —, 142 S. Ct. 1614 (2022), which had issued on May 16, 2022, on the jurisdictional issues in the present matter. [Dkts. 39, 40]. On July 22, 2022, Plaintiffs filed their opposition [Dkt. 43] to Defendants' supplemental motion.

## II.  LEGAL STANDARD

Federal courts are of limited jurisdiction, and on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court must ensure it has the constitutional and statutory authority to adjudicate. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "The existence of subject-matter jurisdiction 'is never presumed,'" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)), and federal courts "have a duty to ensure that they are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress," Esquilín–Mendoza v. Don King Prods., Inc., 638 F.3d 1, 3 (1st Cir. 2011). The party asserting federal jurisdiction is responsible for establishing that such jurisdiction exists, see Kokkonen, 511 U.S. at 377; Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001), and the Court "must resolve questions pertaining to its subject-matter jurisdiction before it may address the merits of a case," Donahue v. City of

Boston, 304 F.3d 110, 117 (1st Cir. 2002) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101–02 (1998)).

### III. DISCUSSION

Defendants present several jurisdictional arguments in support of their motions to dismiss. First, they assert that 8 U.S.C. § 1252(g) prevents the Court from considering Plaintiffs' requests regarding its asylum proceedings. [See Dkt. 34 at 5-7; see also Dkt. 25 at 6-9]. Second, Defendants claim that USCIS's decision regarding Plaintiffs' application for adjustment of status does not constitute "final agency action" and therefore is not subject to judicial review under the APA. [See Dkt. 34 at 8-15; see also Dkt. 25 at 11-12]. Third, they contend that 8 U.S.C. § 1252(a)(2)(B)(i)-(ii) strip the Court of subject matter jurisdiction to consider Plaintiffs' claims. [See Dkt. 40 at 3-7; see also Dkt. 25 at 9-10]. Plaintiffs dispute all of Defendants' arguments. Because the Court finds that it lacks jurisdiction over Plaintiffs' claims pursuant to 8 U.S.C. § 1252(a)(2)(B)(i), it needs not address the other jurisdictional arguments.

Section 1252(a)(2)(B) provides that

> [n]otwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B). Subparagraph (i) of this section refers to 8 U.S.C. § 1255, which governs adjustment of status for persons admitted to the United States as nonimmigrant aliens. Plaintiffs filed their applications for adjustment of status pursuant to Section 1255, and USCIS denied the applications in reliance on Section 1255(k), which governs the adjustment of status eligibility for persons filing employment-based petitions. As such, Plaintiffs have challenged a

6

judgment of USCIS "regarding the granting of relief under section … 1255." See 8 U.S.C. § 1252(a)(2)(B)(i). The Court thus must determine whether the jurisdiction-stripping provision of Section 1252(a)(2)(B)(i) applies to this type of judgment and deprives it of jurisdiction to consider Plaintiffs' claim.

The Supreme Court most recently examined Section 1252(a)(2)(B)'s jurisdiction-stripping provision in Patel v. Garland, 142 S.Ct. 1614 (2022). Patel did not address the exact question presented here, but its reasoning is instructive. In Patel, a petitioner who had initially entered the United States unlawfully applied to USCIS for adjustment of status pursuant to Section 1255(i). Id. at 1619. USCIS denied the application pursuant to Section 1255(i)(2)(A) and Section 1182(a)(6)(C)(ii)(I) upon finding that the petitioner had previously misrepresented his immigration status on an application for a drivers' license. See id. at 1620. Years later, DHS initiated removal proceedings against the petitioner. Id. During these proceedings, before an immigration judge, the petitioner challenged USCIS's earlier factual findings that underpinned its conclusion that he was ineligible for adjustment of status under Section 1255(i)(2)(A). Id. At the time, a split among the lower courts existed as to whether an agency's factual findings made as part of considering a request for discretionary relief under Section 1255 constituted a "judgment" within the meaning of Section 1252(a)(2)(B)(i)'s prohibition on judicial review. See id. at 1621 & n.1.

The Supreme Court determined that "judgment," as used in Section 1252(a)(2)(B)(i), "means any authoritative decision" and that the statute's jurisdictional bar thus "'encompasses any and all decisions relating to the granting or denying' of discretionary relief." See id. at 1621–22 (adopting *amicus curiae*'s definition of "judgment"). Thus, the jurisdictional bar is not limited to judicial review of "discretionary judgments or the last-in-time judgment." Id. at 1622.

Accordingly, the Supreme Court held that a petitioner in active removal proceedings may not seek judicial review of the fact-finding underlying an agency's previous judgment pursuant to Section 1255. Id. at 1627.

The Supreme Court mentioned—but explicitly did *not* resolve—the related question presented here: whether Section 1252(a)(2)(B)(i), which, by its own terms, applies "regardless of whether the judgment, decision, or action is made in removal proceedings," also prohibits review of similar "judgments" pursuant to Section 1255 where the petitioner is not involved in removal proceedings. See id. at 1626 ("Those decisions are made *outside of the removal context* . . . . The reviewability of such decisions is not before us, and we do not decide it." (emphasis added)). Both the petitioner and the government argued, as Plaintiffs do here, that the statute does not "preclude[] all review of USCIS denials of discretionary relief." Id. However, the Supreme Court, in dicta, suggested that Congress may have "intend[ed] to close that door" on such review through Section 1252(a)(2)(B), and thus "foreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief." Id. at 1626–27. As both parties cautioned—and as four dissenting Justices warned—a closure of this door would have significant public policy consequences, wholly insulating hundreds of thousands of non-discretionary USCIS decisions (including the decision in this case) from judicial review unless and until a final order of removal has issued:

> [U]nder the majority's construction of subparagraph (B)(i), individuals who could once secure judicial review to correct administrative errors at step one in district court are now, after its decision, likely left with no avenue for judicial relief *of any kind*. An agency may err about the facts, the law, or even the Constitution and *nothing* can be done about it. . . . In the last three months of 2021 alone, USCIS denied more than 13,000 green-card applications, with nearly 790,000 still pending. The agency issues decisions on those applications in unpublished and terse letters, which appear to receive little or no administrative review within DHS. With so many applications receiving such

> abbreviated treatment, who can be surprised that DHS sometimes makes serious errors, or may even be tempted to take shortcuts inconsistent with the law? Until today, courts could correct mistakes like these. But the majority's construction of subparagraph (B)(i) will almost surely end all that and foreclose judicial review for countless law-abiding individuals whose lives may be upended by bureaucratic misfeasance.

Id. at 1636 (Gorsuch, J., dissenting) (internal citations and footnote omitted). The majority, however, retorted that "policy concerns cannot trump the best interpretation of the statutory text." Id. at 1627.

The Supreme Court's suggestion that Section 1252(a)(2)(B)(i)'s jurisdictional bar may apply to review of Section 1255 judgments even outside of the removal context is consistent with most lower court precedent predating Patel—and indeed, suggests that this precedent would be affirmed if it reached the Court. Although the circuit courts are not unanimous in their interpretation of this jurisdiction-stripping provision, and the First Circuit has not considered the question presented, the great weight of lower court precedent supports this Court's conclusion that it is without jurisdiction to hear Plaintiff's claim.[2]

In Lee v. USCIS, the circuit court case most analogous to the case at bar, the Fourth Circuit considered a petitioner's challenge to USCIS's denial of an application for adjustment of status pursuant to Section 1255. 592 F.3d 612, 613–14 (4th Cir. 2010). There, as here, USCIS determined that the petitioner was ineligible for adjustment of status based on fact-finding concerning the petitioner's failure to maintain continuous lawful status (although in Lee, USCIS relied on a different subsection of Section 1255 in making this determination). Id. And as here, the petitioner filed suit in federal court, alleging that USCIS's determination was arbitrary and

---

[2] The First Circuit has recognized that the jurisdiction-stripping provision of Section 1252(a)(2)(B)(ii) may apply outside of the strict context of removal proceedings. See Royal Siam Corp. v. Chertoff, 484 F.3d 139, 143 (1st Cir. 2007) (considering the statute's impact on courts' jurisdiction to review denial of H-1B visa applications and noting that "the jurisdiction-stripping provisions of section 1252 apply outside the removal context"). However, the First Circuit has not considered subparagraph (i) of this statute and the extent to which it deprives courts of jurisdiction to review judgments under Section 1255 outside of the removal context.

9

capricious in violation of the APA, without having been placed in removal proceedings. Id. at 614.

The Fourth Circuit held that this petitioner's claim fell "squarely within the scope of § 1252(a)(2)(B)(i)." Id. at 620. It found that, although Section 1252's language "generally addresses judicial review with regard to final orders of removal," it also specifies that jurisdictional bar of paragraph (a)(2)(B) applies "'regardless of whether the judgment, decision, or action is made in removal proceedings,' [which] makes clear that the jurisdictional limitations . . . also apply to review of agency decisions made outside of the removal context." Id. at 619 (quoting 8 U.S.C. § 1252(a)(2)(B)). Thus, the fact that the petitioner was not, and never had been, in removal proceedings did not render the jurisdictional bar inapplicable. Id.

The Fourth Circuit's interpretation of the plain text of the statute to apply to *all* judgments concerning Section 1255, regardless of whether removal proceedings had commenced, is shared by many other circuits and district courts. See, e.g., Bultasa Buddhist Temple v. Nielsen, 878 F.3d 570, 573 (7th Cir. 2017) ("[T]he statute strips the courts of jurisdiction to review a decision made on an application under that section."); Ayanbadejo v. Chertoff, 517 F.3d 273, 277 (5th Cir. 2008) ("The law makes clear that we and the district court lack jurisdiction over determinations made with respect to an I–485 application for permanent resident status under § 1255."); Jimenez Verastegui v. Wolf, 468 F. Supp. 3d 94, 98 n.5 (D.D.C. 2020) ("Congress also added the language 'regardless of whether the judgment, decision, or action is made in removal proceedings,' 8 U.S.C. § 1252(a)(2)(B), 'presumably to resolve a disagreement between some ... circuits and district courts as to whether § 1252(a)(2)(B) applied outside the context of removal proceedings' . . . ." (citation omitted)); Elhayboubi v. Mayorkas, No. 19 C 7659, 2021 WL 872946, at *3 (N.D. Ill. Mar. 8, 2021) ("Section 1252(a)(2)(B)(i) bars

10

review of 'any judgment,' including judgments made under section 1255."); Abuzeid v. Wolf, No. 18-382, 2020 WL 7629664, at *3 (D.D.C. Dec. 22, 2020) (applying jurisdictional bar where petitioner "challenged his eligibility for adjustment of status under … in a district court, and without removal proceedings pending"); Rajasekaran v. Hazuda, No. 4:13cv3174, 2014 WL 11016404, at *19 (D. Neb. Nov. 3, 2014) (adopting Lee's reasoning); Mhanna v. USCIS, No. 10–292 (JRT/LIB), 2010 WL 5141803, at *19 (D. Minn. Dec. 13, 2010) (same).

The Court is aware of only one circuit court opinion which adopted a sufficiently narrow interpretation of Section 1252(a)(2)(B)(i) to permit it to exercise jurisdiction over Plaintiff's claim. In Mamigonian v. Biggs, the Ninth Circuit construed the statute to permit district courts "to hear cases challenging final agency determinations respecting eligibility for the immigration benefits enumerated in 8 U.S.C. § 1252(a)(2)(B)(i) made on nondiscretionary grounds, provided there is no pending removal proceeding in which an alien could apply for such benefits." 710 F.3d 936, 945 (9th Cir. 2013). Because there is no pending removal proceeding in this case, and Plaintiffs challenge a final agency determination made on nondiscretionary grounds, this Court could hear Plaintiffs' suit by adopting Mamigonian's rule. However, the Ninth Circuit reached its conclusion by relying on a definition of "judgment," as used in Section 1252(a)(2)(B), as "the exercise of discretion or a discretionary determination." See id. at 943 (quoting and adopting definition of "judgment" from Montero-Martinez v. Ashcroft, 277 F.3d 1137, 1144 (9th Cir. 2002)). Thus, the statute's use of "judgment" must be read to exclude nondiscretionary actions—such as USCIS's denial of Plaintiffs' applications pursuant to Section 1255(k)—in order to apply Mamigonian. However, Patel—while not addressing Plaintiffs' position as petitioners outside of the removal context—explicitly foreclosed Mamigonian's definition of "judgment" by defining the term as "any authoritative decision." 142 S.Ct. at 1621–22. Because

11

Mamigonian relies on a contrary, and substantially narrower, definition of the statute's critical term, it appears that Patel has impliedly overruled the case. Indeed, at least one district court recognized, prior to Patel, tension between Mamigonian's definition of "judgment" and the definition it correctly anticipated the Supreme Court would favor. See Jimenez Verastegui, 468 F. Supp. 3d at 100 (criticizing Mamigonian for adopting an "implausible interpretation" of the statute and describing its conflict with Supreme Court precedent). Accordingly, although Mamigonian formally creates a split of the circuits, this Court is without grounds to adopt its reasoning.

The Court does not adopt lightly the interpretation of Section 1252(a)(2)(B)(i) espoused by the Fourth Circuit and others. As both parties to Patel and the four dissenting Justices in that case noted, there are significant public policy concerns around withdrawal of district court review over nondiscretionary USCIS judgments in cases where a petitioner is not in removal proceedings and is not imminently likely to be placed in removal proceedings. This interpretation of the statute will preclude the Plaintiffs in this action from seeking review of USCIS's denial of their adjustment of status applications unless and until they are subjected to final orders of removal. But as the Patel majority instructed, "policy concerns cannot trump the best interpretation of the statutory text." 142 S.Ct. at 1627. Section 1252(a)(2)(B)(i) deprives this Court of jurisdiction to hear Plaintiff's claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss [Dkts. 33, 39] are **GRANTED**.  Accordingly, Plaintiffs' motion for injunctive relief [Dkt. 19] is **DENIED** as moot.

**SO ORDERED.**

Dated: August 31, 2022                                          /s/ Angel Kelley
                                                                Hon. Angel Kelley
                                                                United States District Judge